## FIRST NAT. BANK OF ATHENS v. GUARANTY BOND STATE BANK OF ATHENS et al. (No. 1746.) *

Court of Civil Appeals of Texas. Beaumont. Dec. 26, 1928.

Rehearing Denied Jan. 9, 1929.

Sam Holland and W. R. Bishop, both of Athens, and Wynne & Wynne, of Wills Point, for appellant.

Justice & Sigler, of Athens, for appellees.

O'QUINN, J. Appellant, First National Bank of Athens, on August 23, 1927, recovered

*Writ of error granted.

judgment in the district court of Henderson county, Texas, against J. P. Morrow for $2,870, which had not been satisfied. October 13, 1927, it instituted garnishment proceedings against the Guaranty Bond State Bank of Athens, Henderson county. Writ of garnishment was duly issued, the officer's return showing service thereon being as follows: "Came to hand on this the 13th day of October, 1927, at 8:45 A. M. and executed on the 13th day of October, 1927, at 9:45 o'clock A. M. by delivering to Tom P. Faulk, Vice President of the Guaranty Bond State Bank, Athens, Texas, in person, a true copy of this writ. F. P. Morrow, Sheriff, by T. L. Davis, Deputy, Henderson County, Texas."

On October 19, 1927, J. P. Morrow, with A. W. Sides and H. S. Barron as his sureties, executed and had approved a replevy bond in terms of law whereby he replevied "any effects, debts, shares or claims of any kind, seized or garnished under and by virtue of said writ of garnishment."

February 6, 1928, appellees, Guaranty Bond State Bank of Athens and J. P. Morrow and his sureties on his replevy bond, filed motions to quash the writ of garnishment, for the reason that the service of said writ, as shown by the officer's return thereon, was not in compliance with law, and was therefore of no force, was void, and amounted to no service, in that the return of the officer executing the writ showed same to have been served on Tom B. Faulk, the vice president of said bank, whereas under the statute service on the vice president of a domestic corporation would not be service on the corporation, and hence of no effect.

Appellant filed its answer to the motion to quash as follows (omitting formal parts):

"Now comes the plaintiff, the First National Bank of Athens, Texas, in the above entitled and numbered cause, and files this its replication to the garnishee's motion to quash the writ of garnishment herein, and shows to the court.

"That the writ of garnishment was served upon Tom P. Faulk; that the said Tom P. Faulk is and was at the time of service the active vice president of the said Guaranty Bond State Bank and that he has complete charge and control of the operation of said bank; that he is the local agent for said bank and is the active head and general manager of said Guaranty Bond State Bank. That said writ of garnishment was served upon the said Tom P. Faulk, active vice president, local agent and general manager during banking hours and while the said Tom P. Faulk was in the principal office of said banking institution, and said writ of garnishment was left by the officer executing the same at the principal office and place of business and within the banking hours of said banking institution.

"Wherefore the plaintiff prays the court that proof be heard of the allegations herein set up and this court permit and order the officer executing said writ to amend the return upon said writ of garnishment in keeping with the allegations herein contained, and that said motion to quash the writ be in all things overruled."

The motion to quash was regularly heard, the only evidence offered being the testimony of Tom P. Faulk, vice president of the bank garnished, the officer served. He testified: "My name is T. P. Faulk. I am vice president of the Guaranty Bond State Bank. I have served in that capacity seventeen years as vice president. I am an active vice president. As to what my duties are, I don't know whether I can express that any more fully than the term named—of course, I make loans, look after the general running of the bank, if necessary borrow money, or do anything that is necessary about it. Yes, sir, I perform all the necessary official acts of the bank. We have some by-laws that we are supposed to go by. No, I don't think I am authorized, as vice president, to make the deeds. Yes, sir, my daily duties under my office require me to be at the office of the bank the principal portion of my time. I make and approve loans and borrow money for the bank whenever it becomes necessary. Of course, you understand, to borrow money I have got to get the consent of the Board of Directors, but I think after that we have a statute that we go by. Yes, sir, I remember where I was on the date of the serving of this writ of garnishment. I was at the second window on the south side, inside of the bank. No, sir, I was not inside of the cage of the bank, just on the outside of the cage, just west, right close up to the cage. I was at the window called the receiving teller window. However, we pay and receive any place we can get at. I don't remember what day the writ was served on me, but I think in the morning. Yes, sir, it was during banking hours. When it was served upon me I turned to Mr. Morrow's account and made a little memorandum 'Account garnisheed,' and called Mr. Morrison's attention to it. Mr. Morrison is the paying teller. He was in the cage there, and of course he would pay out the money. I notified him. I receive deposits, honor checks and have authority to sign them and Mr. Wofford has authority to sign drafts, too. Mr. Morrison is the teller, and we have two young ladies there as bookkeepers and a stenographer. Yes sir, I am a regular employé of the bank, receiving a salary for my services. I reside in Henderson County, Texas, at Athens, born and raised here. Yes, sir, during all of the seventeen years I have been connected with the Guaranty Bond Bank I have performed about the same duties I now perform—I don't see much difference. I was cashier and I have been made vice president, don't see much difference in it. I did whatever come up, of course some difference according to record. No, sir, I don't at any

time serve as president of the bank during the absence of Mr. Wofford, the president. I just go ahead and sign as vice president when Mr. Wofford is away. As to who presides over the Board of Directors meeting in the absence of Mr. Wofford—Mr. J. J. Faulk has the title of Chairman of the Board, and he presides over that. Yes, sir, I am one of the directors of the bank. As to whether or not the notation I made by the side of Mr. Morrow's account, that it was garnisheed, and not subject to draft has been observed by the bank officials and employés of the bank— I think while I was in Houston that money was drawn out, some bond or something—I don't think it is there now. Yes, sir, I was vice president of the bank at the time I was served with the writ. Yes, sir, the Guaranty Bond State Bank at that time had a president. Mr. T. B. Wofford was president of the bank at that time. Yes, sir, we had a cashier at that time. He was present at the time that writ was served. I couldn't tell you whether or not Mr. Wofford, the president, was in the bank at the time the writ was served, don't know whether in the bank at the time or not or at the front end. Mr. Davis just handed me the writ of garnishment, and I went to the books there and dropped it in that page where the account was and made a little notation in there that the account was garnisheed, and called Mr. Morrison's attention to that, that the account was garnisheed. Mr. John W. McBailey was in the capacity of cashier at that time."

At the conclusion of the hearing the court overruled appellant's motion to amend the officer's return, and sustained the motion to quash the writ, and entered judgment accordingly. This appeal is from that judgment.

■ Appellant's first proposition asserts that the vice president of the garnished bank, to whom copy of the writ was delivered, performed the services of a cashier and treasurer, and, under the holding in Rosenberg v. Bank (Tex. Civ. App.) 27 S. W. 897, "he was to all intents and purposes the treasurer of the bank," in contemplation of article 2029, R. S. 1925, wherefore the service was good.

In the Rosenberg Case the bank garnished was a national bank, and service of the writ was upon the cashier. It was held in that case that, because the National Banking Act makes the cashier one of the principal officers of the bank, and that his inherent powers are such as that he is not only an agent of the bank, but occupies a position which embraced the powers and duties of the treasurer of the corporation, and hence for all practical purposes he was treasurer of the bank, and therefore service on him as cashier was good, because (a) he was an agent of the bank, and (b) he was to all intents and purposes treasurer of the bank. This case does not appear to have reached the Supreme Court. This holding is in the face of article 2029, R. S.

1925, which has been the law as to service on domestic corporations for many years, and the decision seems to have rested upon the position of cashiers under the federal law. The statute, article 2029, R. S. 1925, provides three ways by which corporations may be served with citations: (1) Upon the president, secretary, or treasurer of the corporation; (2) upon the local agent representing the corporation in the county where the suit is brought; and (3) by leaving a copy of the citation or writ at the principal office of the corporation during office hours. Service of process to be binding upon a corporation must be made upon the identical officer or agent named by the statute, or in the identical way prescribed by the statute. As was said by Chief Justice Hemphill in Roberts v. Stockslager, 4 Tex. 308: "The provisions of the statute, as to the mode of service, and the fullness of the return, are as plain, as they are imperative. They can not be mistaken; and the courts should not permit them to be disregarded. They prescribe the mode by which the court acquires jurisdiction over the person of the defendant, and as this is necessary to give validity to its acts and judgments, the regulations * * * should be strictly observed by the officers charged with the duty, and enforced by the tribunal before which the matters in controversy are to be determined."

The Legislature, in enacting the statute, named certain officers of the corporation upon whom service could be had. If it had been intended that service upon the vice president or cashier would be lawful, they certainly would have been named along with the other officers that were designated. Because the vice president at times performs duties usually performed by cashiers, if he does, does not in fact or name constitute him such officer, even if it could be said that service on the cashier as such would satisfy the statute, which we do not believe. See Walker v. Illinois Torpedo Co. (Tex. Civ. App.) 278 S. W. 456.

■ Appellant's second proposition insists that Tom P. Faulk, the vice president upon whom service was had, was shown to have been the *local* agent of the garnishee bank, in contemplation of article 2029, R. S. 1925, as was also held by Rosenberg v. Bank, supra, and hence the service was good.

We think this contention is not sound. While the vice president of a bank may, for some purposes, be an *agent* of the bank, yet we do not believe that the expression "local agent," used in the statute, was intended to include regularly and legally designated officers of the bank, but that same applies to corporations or companies which have stations or places of business apart from their principal office, such as railroad corporations, where they must have a local agent to manage their local affairs and upon whom service

under the statute may be had. If the officers of a corporation may, for the purpose of service of process, be also treated as local agents for said purpose, why did the statute name the officers at all? The Legislature evidently had some purpose in naming certain officers of corporations upon whom service .could be had, in contradistinction to local agents of such corporations. Besides, the writ in the instant case did not name any officer or agent upon whom service was commanded to be made, and, when such is the case, the return on the writ must state specifically the officer or other person and his character as representative of the corporation upon whom service was had. The return on the instant writ complied with that requirement, and showed service on the vice president, not the cashier or local agent, if the bank had any such particular agent, the vice president not being such officer as under the statute could be legally served. The return shows plainly that the officer serving the process intended to serve the writ on the vice president and not upon a local agent, and that he did so and made a true return on his writ. Bank v. Meyers & Co. (Tex. Civ. App.) 283 S. W. 265; Household Furniture Co. v. Alvarado (Tex. Civ. App.) 246 S. W. 1111.

The next proposition is that the officer left a copy of the writ of garnishment "at the principal office" of the garnishee, an incorporated company, during office hours, within contemplation of article 2029, R. S. 1925, and so the service was legal. We think this contention must be overruled. While it is true that physically it was left at the bank, still it had been already served by delivering it to the vice president of the bank, who had received same from the officer serving same and turned it over to the bookkeeper to note same on the bank's books at the account of the defendant in judgment. The writ was not left there, as in compliance with the statute as to service, for the return shows without dispute that the service was had by delivering the copy of the writ to Tom P. Faulk, the vice president of the bank, intending to serve him as such officer, and not by leaving a copy of the writ at the principal office of the bank during office hours, and it must be presumed that the officer's return states the truth.

The fourth proposition asserts that, because the replevy bond executed by J. P. Morrow and his sureties recites that the writ of garnishment was served by Deputy Sheriff T. L. Davis on Guaranty Bond State Bank of Athens, named as garnishee, Morrow and his bondsmen are estopped from asserting that such service was not had, because such assertion is in contradiction of their recited position in their said bond, and cites us to the of Seinsheimer v. Flanagan, 17 Tex. Civ. App. 427, 44 S. W. 30, to sustain its contention. The proposition is overruled. They were exercising the right given them by statute, article 4084 [279], [225], R. S. 1925, and therefore cannot be held to be estopped from doing the very thing the statute expressly permitted them to do. It is not believed that the case cited by appellant supports its contention. In that case the garnishee voluntarily appeared and, without objection to the proceedings, submitted the matter in controversy to the court. Having lost in the trial court. he attempted on appeal for the first time to urge defects in the affidavit for garnishment and in the sheriff's return on the writ, which, of course, he could not do. In that case it was also held that, where the debtor in garnishment proceedings replevied the claim and the money was paid to him, he was estopped to assert that the indebtedness garnished and claimed and replevied by him was not in fact owing to him. No such state of facts exists in the instant case, nor was any such contention made. See Fleming v. Pye, 43 Tex. Civ. App. 176, 95 S. W. 594; Luse v. Ft. Worth Electric & Motor Car Co. (Tex. Civ. App.) 261 S. W. 163; Walker v. Illinois Torpedo Co. (Tex. Civ. App.) 278 S. W. 456.

Appellant further complains that legal service of the writ of garnishment having been shown, the court erred in overruling plaintiff's motion to permit and order the officer who served the writ to so amend his return upon the writ as to show such service. This assignment is overruled. In the first place, it assumes that the service was in compliance with the statute governing service on corporations. The return on the writ, which is in no sense ambiguous, shows that no such service was had. Secondly, returns on writs are permitted to be amended to correct some informality or mistake made in the return. Article 2044, R. S. 1925. The burden was on appellant to show such mistake or informality in the return. There was a hearing on the motion to amend the return, and there was no showing of mistake, and there is no informality. The officer who served the writ did not testify. Appellant's motion to have the officer amend the return was for the purpose of having him to certify that he delivered a copy of the writ to the local agent of the garnishee bank, and that he left a copy of the writ at the principal office of said bank during office hours. This would not only not have shown or corrected any informality or mistake in the return, but would have pointedly contradicted the return as certified by the officer, that is shown an entirely different service in an entirely different manner than that certified by the officer and sought to be amended. There is no contention that the officer left more than one copy of the writ at the bank—one with the vice president, one with the local agent, and one at the principal office of the bank during banking hours. Then how could service have been had by delivering the one copy to the vice president and also to the local agent and also by leaving it at the prin-

680

cipal office of the corporation? It appears without dispute that the amendment of the return sought was to change the manner of service entirely—have the officer make a new return stating different service from that actually had.

Moreover, the writ with the service thereon noted was returned October 13th. Appellee, Morrow, with knowledge of this return, executed his replevy bond October 19th. It was the duty of appellant to see that proper return be made on the writ. The service on its face being insufficient, and appellee Morrow and his sureties having executed the replevy bond while such insufficient service was shown by the return on the writ, we do not believe that after this was done appellant had the absolute right to have the return so amended as to show a different service of the writ that would have been binding on the parties, thus subjecting them to a burden that did not exist at the time they executed the replevy bond. Amendments of this character are not granted as a matter of right. The court is bound, in every case, to exercise a sound discretion, and allow or disallow an amendment as may best tend to the furtherance of justice. 21 R. C. L. 1329. To say the least, the sureties on the replevy bond, acting with knowledge that the service of the writ as shown by the officer's return thereon, was ineffectual, had executed the bond and thus became intervening third parties, and it was not an abuse of the court's discretion to refuse the motion to amend, which, if granted, would have injuriously affected their rights. Our conclusion on this proposition has full support in the rule, announced in 21 R. C. L. 1332, as follows: "As a general rule such an amendment will not be permitted to affect injuriously the rights of third persons which have attached in the meantime and which were acquired on the faith of the verity of the original return."

The judgment should be affirmed, and it is so ordered.